### SCOWS NOS. 21 AND 59.

(District Court, S. D. New York. February 21, 1903.)

**1. ADMIRALTY—SALVAGE.**

A tug worth $35,000, which discovered drifting scows worth $25,000, that had broken from their mooring on a windy, freezing night, rendered services for five or six hours keeping them from the danger of being injured or injuring anchored vessels in the line of drift. She used all her power, and in doing so was damaged to the amount of $300. *Held*, that $2,000, with $200 for the damages, should be awarded her; one-third of the $2,000 to go to the master and crew in proportion to their wages, after allowance of $100 to the master.

In Admiralty. Action to recover salvage.

John F. Foley, for libellant.

Robinson, Biddle & Ward, for claimants.

ADAMS, District Judge. This is an action to recover salvage. On the 31st day of December, 1901, dumping scows Nos. 21 and 59, with other scows, were lying fast to the claimants' stake boat, about half a mile from Robbins' Reef Light. Nos. 21 and 59 were loaded with mud. It was a cold and very stormy night, with a high northwest wind, causing a choppy sea, which froze as it blew on the boats. About three o'clock in the morning of January 1st, all the scows broke away from the stake boat and drifted, with an ebb tide, to the southward, until they brought up against a schooner, which was lying anchored off Stapleton, Staten Island, and caused her to drag her anchor. While the scows were drifting towards the schooner, the tug Eli B. Conine, under the command of the libellant Conine, who was the master and one of the owners thereof, was going down the bay, light, and those on board discovered the scows. Finding they were

¶ 1. Salvage awards in federal courts, see note to The Lamington, 30 C. C. A. 280.

not under control, those on the Conine prepared to take them in tow but before they could do so, the scows drifted foul of the schooner, part on one side of her and part on the other. After some difficulty, on account of the high wind and the freezing weather, the Conine succeeded in getting the scows away from the schooner but was unable to tow them, although she was a good sized and powerful tug, and they all went down the bay together, to the neighborhood of the Quick Step Buoy, near the West Bank, a distance of about five miles, when some other tugs came to the assistance of the Conine and the scows were towed back to the stake boat. This was about 8 o'clock in the morning. The weather had then moderated, so that the Conine was able to hold the boats against the wind with her own power and any danger was practically over. The tide had shortly before changed to flood but was still young. During all the time from about 4 o'clock, the Conine had been able to keep the scows in the channel, so as to prevent injury to them from stranding or otherwise and from injuring other vessels by collision, which would probably have happened without the tug's assistance, as two steamers, one a few hundred yards behind the other, were anchored below the schooner and in the line of the drift.

The services were very opportune and meritorious. There can be little doubt that the scows, as well as being in danger of becoming liable for collisions with the steamers, were in considerable danger themselves, either of drifting to sea and being lost, or of being wrecked upon Coney Island, in the vicinity of Norton's Point. There was no other assistance to be had at the time and the scows had no available means of assisting themselves. There is some confusion in the testimony with respect to the scows having anchors but it appears, in any event, that the men on board were unable to use them, because ice, from the spray, continued to form upon them and their chains, and the decks of the scows, in such a manner as to prevent the drift from being stopped in such a way.

The two scows were worth $25,000 and were saved without injury. The Conine was worth $35,000. She used every pound of her allowed power for several hours and thus injured herself, so that she was obliged to undergo repairs to her steam pipes and furnace, costing, with the time she was laid up in making them, about three hundred dollars. The services, however, while attended with some danger to the tug and the men on board were not particularly hazardous, but still of a kind, having the severity of the weather, as well as the skill and endurance shown, in view, that merits commendation and substantial reward. I conclude that $2,000, with $200 for the proportion of repairs which should be paid by these scows, will be a proper award under the circumstances. One-third of the $2,000 will be allowed to master and crew of the tug and two-thirds to the owners. Of the one-third, $100 will be awarded to the master and the rest distributed among him and the other members of the crew, in proportion to their wages.

Decree for libelants accordingly.